Claire Johnson Raba   SBN 271691
Kari Annette Rudd     SBN 268288
BAY AREA LEGAL AID
1035 Market St. 6th Floor
San Francisco, CA 94103
Phone: (415) 982.1300
Fax: (415) 982.4243
Email: cjohnson@baylegal.org
Email: krudd@baylegal.org

Attorney for Plaintiff
DEMTRE SIME

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRE SIME,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>I.Q. DATA INTERNATIONAL, INC.,<br><br>　　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>　1. **Fair Debt Collection Practices Act** (15 USC § 1692 *et seq.*) |

Plaintiff, DEMETRE SIME, based on information and belief and investigation of counsel, except for those allegations which pertain to Plaintiff or her attorney (which are alleged on personal knowledge), hereby makes the following allegations:

## I. INTRODUCTION

1. This is an action for actual damages, statutory damages, attorney's fees and costs brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter "FDCPA") which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

2. Congress passed the FDCPA "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices," which are "widespread and serious national problem[s]."[1]

//

---

[1] Sen. Rep. No. 95-382 on the FDCPA (1977).

3. Plaintiff was a tenant at 136 Wexford Street, Brentwood, CA where she incurred a consumer debt for rental housing. On October 17, 2012, Plaintiff's landlord, Rosecomp, LLC (hereinafter "Rosecomp") filed an unlawful detainer action against Plaintiff in the Superior Court of California, Contra Costa County, Pittsburg Branch.

4. Plaintiff resolved the unlawful detainer through a settlement agreement in which she agreed to move out in exchange for Rosecomp's agreement to set aside the entry of judgment and waive any alleged debt and any other interest or fees.

5. Notwithstanding this agreement, at some point unknown to Plaintiff, Rosecomp assigned an alleged debt for unpaid rent in the amount of a $3,594.00 principal balance, with an additional $541.00 in interest, for collection to Defendant I.Q. DATA International, Inc. (hereinafter "I.Q. DATA").

6. Plaintiff applied for housing on July 24, 2014 and was denied based upon the erroneous information placed on her credit report by Defendant.

7. When Plaintiff sent Defendant proof she did not owe the debt, Defendant's customer service agent told Plaintiff that she did, in fact, owe the money and that she must find a way to pay them.

8. Due to Defendant's willful and deliberate refusal to stop reporting a debt that Plaintiff did not owe, Plaintiff and her family continued to be denied housing.

9. Plaintiff was a Section 8 Housing Choice Voucher[2] recipient, which helped her and her family afford safe and sanitary rental housing in California, until Defendant's delay in removing this debt caused Plaintiff to lose her Section 8 voucher.

10. Plaintiff cannot afford rent at market rate and since losing her Section 8 voucher, has lived in a one-room motel with her two children and two grandchildren, paying double the rent she would have paid for the two-bedroom rental she was denied on July 24, 2014.

---

[2] *See generally* 24 C.F.R. § 982.1 (2015) (the U.S. Department of Housing and Urban Development's (HUD) primary program for assisting very low-income, elderly, and the disabled in affording housing on the private market).

- 2 -
COMPLAINT

## II. JURISDICTION

11. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

12. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## III. VENUE

13. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper in this judicial district pursuant to 15 U.S.C. § 1692k(d), in that Defendant transacts business in this judicial district and Defendant's violations of the FDCPA occurred in this judicial district.

## IV. INTRADISTRICT ASSIGNMENT

14. This lawsuit should be assigned to the San Francisco/Oakland Division of this Court because a substantial part of the events or omissions which gave rise to this lawsuit occurred in Contra Costa County.

## V. PARTIES

15. Plaintiff, DEMETRE SIME (hereinafter "Plaintiff"), is a natural person residing in Contra Costa County, California.

16. Defendant I.Q. DATA is a Washington Corporation. Its principal place of business is located at: 1010 SE Everett Mall Way, Ste. 100, Everett, WA, 98208. I.Q. DATA may be served at the address of its registered agent for service of process, Kenneth Stumbo, at: 1010 SE Everett Mall Way, Ste. 100, Everett, WA, 98208.

## VI. FACTUAL ALLEGATIONS

17. In September of 2012, Plaintiff, a tenant at 136 Wexford Street, Brentwood, CA, incurred a financial obligation to landlord Rosecomp for provision of housing (hereinafter "the debt").

18. On November 7, 2012, a default judgment was entered against Plaintiff in *Rosecomp, LLC v. Demetre Sime et al.*, Case No. PS12-1699, in favor of Rosecomp for restitution of the

premises only, and no award of money damages fees or costs.

19. On December 11, 2012, Rosecomp and Plaintiff signed a settlement agreement in which Rosecomp stipulated to set aside default judgment and expressly waived all claims to the debt on the condition that Plaintiff submit a $1797.00 payment, surrender possession, and vacate the premises by the agreed upon date (hereinafter "the Settlement").

20. The Settlement states that upon Plaintiff's timely completion of all applicable terms, Rosecomp will file a Request for Entry of Dismissal without prejudice for the November 7, 2012, default judgment, Case No. PS12-1699.

21. Plaintiff fully performed her obligations under the Settlement by making a timely payment of $1797.00, and by surrendering possession to Rosecomp and vacating the premises by the date agreed upon.

22. On February 1, 2013, Rosecomp filed a Request for Entry of Dismissal of the November 7, 2012, action against Plaintiff.

23. Plaintiff is informed and believes that "Waypoint Homes California" (hereinafter "Waypoint") does business as "Rosecomp" and that I.Q. DATA reported the Rosecomp account as Waypoint Homes California in their debt collection activity.

24. Plaintiff is informed and believes, and thereon alleges that, beginning sometime after February 1, 2013, and continuing through July 23, 2014, Defendant attempted to collect the debt from Plaintiff by reporting the debt to credit reporting agencies in a tradeline listing I.Q. DATA as the current creditor and the original creditor as Waypoint.

25. In March of 2013, Plaintiff and her family were having an exceptionally difficult time finding affordable rental housing, and, for reasons they couldn't understand, their rental applications were relentlessly rejected wherever they applied. They temporarily moved into a motel until they could find a permanent housing arrangement. Upon information and belief, Plaintiff's applications were being denied was as a result of Defendant's actions underlying this case.

26. On July 23, 2014, Plaintiff applied for rental housing with Riverstone Apartments (hereinafter "Riverstone") in Antioch, California.  As part of her application, she authorized Riverstone

to pull a credit report from On-Site Rental Relations (hereinafter "On-Site").

27. On information and belief, On-Site is a reseller of consumer data and obtained Plaintiff's consumer information from the major credit reporting agency Experian.

28. On July 24, 2014, Riverstone rejected Plaintiff's rental application because her On-Site credit report contained an entry from I.Q. DATA reporting a $3,594.00 principal balance owed, and an additional $541.00 in interest.

29. Defendant I.Q. DATA is in the business of regularly collecting debts alleged to be due another by utilizing the U.S. Mail, telephone, and Internet.

30. On July 24, 2014, Plaintiff informed Riverstone that she did not, in fact, owe the debt being reported by I.Q. DATA, and sent a copy of the Settlement to On-Site by fax, showing that all claims for back debt were waived by Rosecomp.

31. An employee of Riverstone informed Plaintiff that the only thing preventing her from being eligible for a two-bedroom unit at Riverstone was the debt reported by I.Q. DATA.

32. The Riverstone employee attempted to help Plaintiff resolve the matter by faxing information about the Settlement to On-Site and I.Q. DATA.

33. Riverstone informed Plaintiff that if she wanted to get the debt removed from her credit report she would need to contact I.Q. DATA herself with proof that she did not owe the debt, and then ask I.Q. DATA to contact On-Site with instructions to discontinue reporting the debt.

34. In the week following her rental rejection from Riverstone, Plaintiff contacted I.Q. DATA more than fifteen times over phone, provided multiple faxed copies of the Settlement, and repeatedly explained that she did not owe the debt.

35. Notwithstanding the Settlement showing Plaintiff does not owe the debt, I.Q. DATA customer service representatives told Plaintiff over the phone, on multiple occasions, that the Settlement did not apply to Plaintiff's obligation and told Plaintiff, "you still owe this debt" and "you must pay it now."

36. On or about September 24, 2014, Plaintiff retained an attorney from Bay Area Legal Aid to assist her with this matter.

37. On or about October 13, 2014, Plaintiff received notice from the Housing Authority of Contra Costa County that if she was unable to find rental housing before November 11, 2014, that she would lose her Section 8 Housing Choice Voucher.

38. On or about October 23, 2014, Plaintiff sent letters disputing the debt to both I.Q. DATA and On-Site.

39. Defendant I.Q. DATA told Plaintiff's attorney on or about October 28, 2014, that notwithstanding the Settlement agreement, Plaintiff owed the money and "needed to pay it now."

40. Plaintiff was deeply discouraged by the futility of looking for other rental housing while the I.Q. DATA debt was being reported and negatively impacting her credit report and experienced severe emotional distress including severe anxiety and insomnia.

41. On or about October 29, 2014, Plaintiff's attorney demanded Waypoint remedy its wholly illegal assignment of a debt Plaintiff did not owe to Defendant I.Q. DATA.

42. On or about October 30, 2014, Plaintiff's attorney called I.Q. DATA and was informed that I.Q. DATA was no longer collecting debts for Waypoint and that it would "send an update to the credit reporting agencies."

43. On November 11, 2014 Plaintiff's Section 8 voucher expired because she had not been able to obtain suitable rental housing before the deadline set by the housing authority.

44. On or about December 1, 2014, Plaintiff sent a request for a credit report to the Experian credit reporting agency in order to verify that the Defendant was no longer reporting the debt. Upon receipt of the Experian credit report, Plaintiff learned the debt was still being reported, so Plaintiff sent a letter to Experian disputing the debt.

45. Experian finally responded on December 30, 2014, stating that it had removed the I.Q. DATA account from Plaintiff's credit file.

46. Plaintiff's loss of her Section 8 voucher is a direct result of her inability to find rental housing. Even when Section 8 recipients have flawless credit history, they face special challenges finding housing, because California landlords are not required to participate in the program and are not barred from discriminating against voucher recipients; *see Sabi v. Sterling*, 183 Cal. App. 4th 916

(2010). In this case, Plaintiff couldn't pass a basic credit check due to Defendant's error, and as a result, found it impossible to find rental housing as a Section 8 recipient.

47. The Section 8 voucher waiting list in Contra Costa County is many years long. Plaintiff waited nearly four years on the wait list when she was initially awarded her Section 8 voucher.

48. The significance of losing housing assistance covering a substantial majority of a recipient's monthly rent payment can't be understated.  For Ms. Sime, losing the voucher resulted in a dramatic disruption in her ability to afford safe and sanitary housing. Moreover, the voucher carries a considerable monetary benefit and its expiration represents a substantial monetary loss to Ms. Sime.

49. Now that Plaintiff's credit is no longer negatively impacted by the debt, she will likely have less difficulty in finding a landlord who will rent to her. However, without her voucher affordable housing options are severely limited. With a voucher, Plaintiff paid rent equal to 30% of her income, with a Housing Assistance Payment to cover the remaining rent. This made it possible for her to afford safe and sanitary housing. [3]  Now Plaintiff and her family must pay 100% of the rent on a very low household income. Because they have not been able to find affordable housing, Plaintiff and her family continue to live in the one-room motel they were forced to move into over a year ago as a result of Defendant's actions.

## VII.  CLAIMS

### COUNT I:

### FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 *et seq*.

50. Plaintiff incorporates all paragraphs in this Complaint as though fully set forth herein.

---

[3] *See generally* Housing Choice Voucher Fact Sheet, U.S. DEP'T OF HOUS. AND URBAN DEV. *available at* http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/hcv/about/fact_sheet (last visited, Mar. 19, 2015) (showing the amount of housing assistance a voucher recipient generally receives is approximately equal to a full month's rent payment—according to the agency's rent payment standard—minus 30% of the recipient's monthly adjusted income); 24 CFR §§ 982.503–5 (formulas for rent payment standard, and amount of a voucher recipient's monthly housing assistance).

51. Plaintiff brings the first claim for relief against Defendant under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

52. Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3) because she is a "natural person obligated or allegedly obligated to pay any debt."[4]

53. The financial obligation incurred by Plaintiff is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) because it was initially incurred "primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."[5]

54. Rent paid pursuant to a lease is a "debt" covered by the FDCPA. *Brown v. Budget Rent-A-Car Syst., Inc.*, 119 F.3d 922 (11th Cir. 1997); *Dickman v. Kimball, Tirey & St. John, LLP*, 982 F. Supp. 2d 1157, 1164 (S.D. Cal. 2013); *Romea v. Heiberger & Assoc.*, 163 F.3d 111 (2d Cir. 1998).

55. Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6) because they regularly collect or attempt to collect, "directly or indirectly, debts owed or due or asserted to be owed or due another."[6]

56. The Defendant has violated the FDCPA, 15 U.S.C. § 1692 *et seq*. The violations include, but are not limited to, the following:

    a. Defendant used false, deceptive, and misleading representations and means to collect a debt, in violation of 15 U.S.C. § 1692e and §1692e(10), when they attempted to collect a debt from Plaintiff that they had no legal right to collect, by reporting to credit bureaus that Plaintiff owed a debt for rent and interest.

    b. Defendant used false, deceptive, and misleading representations and means to collect a debt, in violation of 15 U.S.C. § 1692e and §1692e(10), when they attempted to collect a debt from Plaintiff that they had no legal right to collect, by communicating to Plaintiff over the phone that she owed the debt for rent and interest despite the Settlement extinguishing the debt.

    c. Defendant falsely represented the character, amount, and legal status of a debt, in

---

[4] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).
[5] 15 U.S.C. § 1692a(5).
[6] 15 U.S.C. § 1692a(6)

- 8 -
COMPLAINT

violation of 15 U.S.C. § 1692e(2)(A), when they attempted to collect a debt from Plaintiff that they had no legal right to collect, by reporting to credit bureaus that Plaintiff owed a debt for rent and interest.

d.    Defendant falsely represented the character, amount, and legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A), when they attempted to collect a debt from Plaintiff that they had no legal right to collect, by telling Plaintiff over the phone that she owed a debt for rent and interest despite the Settlement.

e.    Defendant communicated credit information which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8), when they reported a debt that they had no legal right to collect, through credit reporting.

f.    Defendant used unfair and unconscionable means to collect the debt, in violation of 15 U.S.C. § 1692f, because Plaintiff provided Defendant a copy of the Settlement that extinguished the debt, and Defendant failed to update credit reporting information after, and failed to communicate with Waypoint about the validity of the assigned debt.

g.    Defendant attempted to collect a debt not expressly authorized by the agreement creating the debt, or permitted by law, in violation of 15 U.S.C. § 1692f(1), when they continued to report the debt after Plaintiff provided them a copy of the Settlement extinguishing the debt.

h.    Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the debt.

57.    As a result of Defendant' FDCPA violations, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k.

## VIII. REQUEST FOR RELIEF

58.    Plaintiff requests that this Court:

a)    Declare that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(8), 1692e(10), 1692f, and 1692f(1);

b)    Award Plaintiff actual damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1);

c) Award Plaintiff statutory damages in an amount not exceeding $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

d) Award Plaintiff the costs of this action and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3)[7]; and

e) Award Plaintiff such other and further relief as may be just and proper.

Date: April 23, 2015

BAY AREA LEGAL AID

By: /s/ Claire Johnson Raba
Claire Johnson Raba (SBN 271691)
BAY AREA LEGAL AID
1035 Market St. 6th Floor
San Francisco, California 94103
Telephone Number: (415) 982 1300
Facsimile Number: (415) 982 4243
Email Address: cjohnson@baylegal.org

Attorneys for Plaintiff
DEMETRE SIME

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, DEMETRE SIME, hereby demands a trial by jury of all triable issues of fact in the above-captioned case.

/s/ Claire Johnson Raba
Claire Johnson Raba

---

[7] *See, e.g., Owens v. Howe*, 365 F. Supp. 2d 942, 948 (N.D. Ind. 2005) (the attorney fees and cost incurred defending a state court lawsuit are properly awarded as actual damages under 15 U.S.C. § 1692k(a)(1), and not under 15 U.S.C. § 1692k(a)(3)); *Lowe v. Elite Recovery Solutions L.P.*, 2008 U.S. Dist. LEXIS 8353, at *9 (E.D. Cal. Feb. 4, 2008) (awarding attorney fees court costs incurred defending state court action as actual damages under 15 U.S.C. § 1692k). The non-profit status of Plaintiff's counsel does not change this analysis. *See Missouri v. Jenkins* (1989) 491 U.S. 274, 286 (stating that non-profit fees should be "comparable to what is traditional with attorneys compensated by a fee-paying client").